## CASE NO. 23-2166

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
## FOR THE FOURTH CIRCUIT

SUZANNE SCIBEK, individually,
and on behalf of her minor children, C.S., J.S., E.S.;
JACOB SCIBEK; C.S., a minor; J.S., a minor; E.S., a minor,

*Plaintiffs-Appellants,*

v.

CRACKER BARREL OLD COUNTRY STORE, INC.,

*Defendant-Appellee,*

and

LAURA GEE GILBERT,

*Defendant.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT CHARLESTON

## OPENING BRIEF OF APPELLANTS

Kevin B. Smith
HOFFMAN LAW FIRM, LLC
7087 Rivers Avenue
North Charleston, SC 29406
843-769-7077
ksmith@hoffmanlawfirm.com

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-2166__     Caption: __SCIBEKS v. Gilbert and Cracker Barrel__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__SUZANNE SCIBEK, individually, and for her minor children, C.S., J.S., E.S. and JACOB SCIBEK__
(name of party/amicus)

_____

 who is _____Appellants_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     YES ☐ NO ☑


2.     Does party/amicus have any parent corporations?     ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?     ☐ YES ☑ NO
       If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                      ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: Kevin B. Smith _____     Date: _____ 11-7-23 _____

Counsel for: Appellants _____

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................... ii

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES..................................................................2

STATEMENT OF THE CASE AND FACTS ..............................................2

SUMMARY OF THE ARGUMENTS .........................................................5

STANDARD OF REVIEW ..........................................................................5

ARGUMENTS..............................................................................................6

    I.    BUSINESSES AND CORPORATIONS HAVE A DUTY TO
        ACT REASONABLY WHEN DECIDING WHAT TO DO
        WITH A VISIBLY INTOXICATED EMPLOYEE .................................9

        A. The District Court confuses Restatement (Second) of Torts §
           324 with the standard necessary in Restatement (Second) of
           Tort § 319 ..................................................................................13

        B. The Texas Supreme Court provides a well-reasoned
           approach to this issue ..............................................................22

CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

## Cases

Araujo v. Southern Bell Tel. & Tel. Co.,
  291 S.C. 54 (1986) ................................................................ 6

Ballou v. Sigma Nu Gen. Fraternity,
  291 S.C. 140, 352 S.E.2d 488 (1986) ................................ 10

Carson v. Adgar,
  326 S.C. 212, 486 S.E.2d 3 (1997) .................................... 13

Doe v. Marion,
  361 S.C. 463, 605 S.E.2d 556 (2004) ................................ 10

Fabian v. Lindsay,
  410 S.C. 475, 765 S.E.2d 132 (2014) .................................. 7

Faile v. S.C. Dep't of Juvenile Justice,
  350 S.C. 315, 566 S.E.2d 536 (2002) ....................... 10, 11, 12, 17, 19

Falconer v. Beard-Laney, Inc.,
  215 S.C. 321, 54 S.E.2d 904 (1949) .................................... 8

Felts v. Richland Cnty.,
  303 S.C. 354, 400 S.E.2d 781 (1991) ................................ 15

Folliard v. Semler,
  429 U.S. 827, 97 S. Ct. 83, 50 L. Ed. 2d 90 (1976) .......... 18

Glynn v. EDO Corp.,
  710 F.3d 209 (4th Cir. 2013) ............................................... 5

Hardee v. Bio-Medical Applications of S.C., Inc.,
  370 S.C. 511 (2006) ...................................................... 8, 12

Jackson v. S.C. Dep't of Corrections,
  301 S.C. 125, 390 S.E.2d 467 (1989) ................................ 11

Kilgore Group v. S.C. Employment Sec. Comm'n,
  313 S.C. 65, 437 S.E.2d 48 (1993) .................................... 15

King v. Durham Cnty. Mental Health Developmental Disabilities & Substance Abuse Auth.,
    113 N.C. App. 341, 439 S.E.2d 771 (1994) ...................................................... 10

Mathias v. Accor Econ. Lodging, Inc.,
    347 F.3d 672 (7th Cir. 2003) ............................................................................ 6

Otis Eng'g Corp. v. Clark,
    668 S.W.2d 307 (Tex. 1983) .................................................................. 22, 23

Rayfield v. S.C. Dep't of Corr.,
    297 S.C. 95, 374 S.E.2d 910 (1988), cert. denied, 298 S.C. 204,
    379 S.E.2d 133 (1998) ................................................................................. 9, 11

Robertson v. LeMaster,
    301 S.E.2d 563 (W. Va. 1983) ......................................................................... 23

Rogers v. S.C. Dep't of Parole & Cmty. Corr.,
    320 S.C. 253, 464 S.E.2d 330 (1995) ............................................................... 9

Semler v. Psychiatric Instititute of Washington, D.C.,
    538 F.2d 121 (4th Cir. 1976) .......................................................................... 18

Sentry Select Ins. Co. v. Maybank Law Firm, LLC,
    426 S.C. 154, 826 S.E.2d 270 (2019) ........................................................... 7, 8

Tobias v. Sports Club,
    332 S.C. 90, 504 S.E.2d 318 (1998) ................................................................. 8

Vaughn v. N.C. Dep't of Human Resources,
    296 N.C. 683, 252 S.E.2d 792 (1979) ............................................................ 10

## Statutes

28 U.S.C. § 1291 ................................................................................................ 1
S.C. Code Ann. § 61-4-580 ............................................................................... 8

## Other Authorities

*Harper, James, and Gray* § 18.7 (3rd ed. 2009) ...................................................10
Hubbard & Felix, The South Carolina Law of Torts (1990) ................................ 10
Restatement (Second) of Torts § 314 ...................................................................... 9
Restatement (Second) of Torts § 315 ................................................................... 10

iii

Restatement (Second) of Torts § 319 ............................................................... passim

Restatement (Second) of Torts § 317 ...................................................................... 10

Restatement (Second) of Torts § 324 ........................................... 13, 14, 16, 17, 23

South Carolina Law of Torts §1.B ............................................................................ 6

South Carolina Law of Torts § 2.A.5.b(2) ....................................................... 10, 13

United States Office of Personnel Management *Handbook for Supervisors* .. 19-20

W.L. Prosser & W.P. Keeton, Torts (5th ed. 1984) ........................................ 10, 24

William L. Prosser, Handbook of the Law of Torts (4th ed. 1971) ........................ 6

## JURISDICTIONAL STATEMENT

Appellants are citizens and residents of the County of Chemung, State of New York. (J.A. 11 ¶ 1). Appellee Cracker Barrel Old Country Store, Inc. is a corporation organized and existing pursuant to the laws of the State of Tennessee and doing business in the County of Berkeley, State of South Carolina with agents, employees, and a place of business at 1370 N Main Street, Summerville, South Carolina. (J.A. 11 ¶ 3). Appellee Laura Gee Gilbert is a resident and citizen of the County of Berkeley, State of South Carolina. (J.A. 11). The amount in controversy exceeds $75,000.00, exclusive of interest and costs. (J.A. 11 ¶ 4). By Order dated February 9, 2022, the District Court granted summary judgment in favor of the Appellee. (J.A. 583). On February 18, 2022, Appellant filed a motion for reconsideration of the District Court's prior judgment. (J.A. 601) By Order dated April 14, 2022, the District Court denied in part Appellant's motion for reconsideration. (J.A. 643).

This appeal was first filed with the Court on April 26, 2022. (J.A. 669). The Court later dismissed the appeal due to lack of jurisdiction. (J.A. 671). This issue was cured by an Order granting Entry of Final Judgment which was entered on October 16, 2023. (J.A. 673). Therefore, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Appellants timely filed its Notice of Appeal on November 2, 2023. (J.A. 674).

## STATEMENT OF THE ISSUES

This lawsuit was filed asserting that when an employer is *on notice* that (1) an employee has become intoxicated from drugs, alcohol, or both while on the job, and (2) the employee is in no condition to drive home, the employer owes a duty to third persons that employee may encounter on the road to act reasonably under the circumstances.

## STATEMENT OF THE CASE AND FACTS

On June 13, 2020, Laura Gilbert (hereinafter "Laura") was working in the retail shop at Cracker Barrel in Summerville, South Carolina. At her side was a fellow retail employee, Mackenzie Day. As the day started, it seemed uneventful, like any other. But that changed when Mackenzie and customers started to notice something was wrong with Laura.

> The first hour or so of our shift together, Laura seemed to be her usual self. Laura started excusing herself, saying she needed to take a break. Each time Laura returned from her break, I noticed the smell of cigarette smoke getting stronger. In addition to the smell of cigarette smoke, I detected a different smell more pungent than cigarette smoke that I did not recognize. I also saw Laura ingest a few pills. I knew Laura had back pain, so I assumed the pills were prescribed or over the counter.

(J.A. 510, ¶ 3)

The Cracker Barrel surveillance footage corroborates Mackenzie's account and shows Laura frequently disappearing into another area of the stock room just

out of view of the cameras. We also start to see her rocking in place, making

bizarre hand motions, and exhibiting clear balance issues behind the retail counter.

> It became evident to me and customers that something was
> wrong with Laura. Laura stood behind the register with her
> eyes closed, rocking back and forth as I tried to get her
> attention. At first, I was embarrassed because customers
> were looking at me like what's wrong with her. I became
> concerned and contacted my supervisor, Milinda
> Anderson.
>
> When Milinda showed up, I relayed my observations of
> Laura and expressed my concern for her wellbeing.
> Milinda spoke briefly with Laura and said she was fine and
> okay to continue working. I disagreed with Milinda's
> assessment, as I knew Laura was not okay.
>
> Approximately thirty minutes later, I noticed Laura was
> about to fall, so I reached out to steady her, I contacted
> Milinda a second time. After a short one-way conversation
> with Laura, Milinda decided it best that Laura clock out
> and go home. I had reservations that Laura should not be
> driving in her condition, so I expressed my fears to
> Milinda and offered to drive Laura home. Milinda
> dismissed my offer saying, don't worry about it, Laura will
> be alright. When Laura left the Cracker Barrel, I prayed
> she would make it home safe.

(J.A. 510, ¶ 4-5)

Cracker Barrel records show Laura clocked out at 7:43 pm. Surveillance

footage shows her pull away from the parking lot at 8:00 pm. Approximately 30

minutes later, Laura can be seen on neighborhood surveillance footage crashing

head-on into a golf cart full of children at a high rate of speed.



At the scene, multiple bottles of liquor (all unopened) are found in Laura's car along with a bag of marijuana and pills. Laura belligerently insists on field sobriety testing, which she fails horribly. She is arrested for DUI and taken to the station for BAC testing. Laura's BAC was 0.21, nearly three times the legal limit. (J.A. 54). Her bail is subsequently denied because Laura had failed to appear for another pending DUI resulting in an outstanding bench warrant. This arrest is her third DUI charge, all involving wrecks, alcohol, and pills. (J.A. 55).

Cracker Barrel would later testify that when there are concerns over an employee's ability to drive home safely, company policy requires them to thoroughly investigate, contact corporate, and/or call a friend, family member, an ambulance, or the police. (J.A. 624-627).

## SUMMARY OF THE ARGUMENTS

Cracker Barrel filed a Motion for Summary Judgment contending it owed no duty to act reasonably when exercising control over any visibly drunk or otherwise intoxicated employee.  Cracker Barrel contended that as long as they get a visibly drunk employee onto the road and off the property, no one can hold them accountable, even when the harm was foreseeable.  Appellants contended that South Carolina law recognizes a simple duty to act reasonably under the Restatement (Second) of Torts, § 319, Duty of Those in Charge of Person Having Dangerous Propensities. In fact, Appellants devoted most of oral argument to discussing § 319. The Court in its Order confused standards and rulings based upon other sections of the Restatement and failed to specifically deal with § 319, but ruled no duty exists. Appellants filed a Motion to Reconsider putting the issue squarely back in front of the Court, but the Court refused to alter its analysis.

## STANDARD OF REVIEW

This court reviews the district court's grant of a motion for summary judgment de novo, applying the same legal standards as the district court. <u>Glynn v. EDO Corp.</u>, 710 F.3rd 209, 213 (4th Cir. 2013). Thus, summary judgment is only appropriate where there is no genuine issue of material fact. <u>Id</u>. This Court stated that "[i]n determining whether a genuine issue of material fact exists, we view the facts and draw all reasonable inferences in the light most favorable to the non-moving party." <u>Id.</u>

# ARGUMENTS

This appeal boils down to a single issue of duty. While that may seem simple; admittedly it can be confusing and complex. When we strip away the confusion that some courts have landed on one side of the issue, while others have landed in opposition, we are forced to look at the root of duty and its purpose.

> There is no formula for determining duty; a duty is not sacrosanct in itself but only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection. Suffice it to say that a multiplicity of factors come into play when courts contemplate the question of duty. These factors include the policy of deterring future tortfeasors, the moral culpability of the tortfeasor and numerous other conceivable factors; duty is seen in general terms as requiring a person or corporation to conform his or its conduct to a standard which is adequate to protect others from unreasonable risk of harm.

Araujo v. Southern Bell Tel. & Tel. Co., 291 S.C. 54, 57-58 (Ct. App. 1986) (citing William L. Prosser, Handbook of the Law of Torts § 53, 325-326 (4th ed. 1971)).

Cracker Barrel wants to label Appellants' arguments as an expansion of already existing legal theories (i.e. respondeat superior, dram shop, social host, etc.). Instead, we believe our arguments are the "sum total of those considerations of policy." Id. One purpose of tort law is corrective justice. See The South Carolina Law of Torts §1.B. (citing Mathias v. Accor Econ. Lodging, Inc., 347 F.3d 672 (7th Cir. 2003)). "[T]he principle of corrective justice is limited by the need to determine first what constitutes a tortious wrong." Id. We can all agree that endangering the motoring

6

public due to intoxicated driving is clearly wrong under moral and criminal law. Here, shooing away an employee you know to be highly intoxicated off the property and into her car while denying a co-worker's request to drive her home and ignoring company policy requiring management to call a family member is not only wrong, it is offensive to anyone with moral character. Cracker Barrel's sole concern was to protect only themselves and the flow of sales in the gift shop when they made the decision to exercise the control they had over Ms. Gilbert. When you read their arguments, Cracker Barrel believes that as long as they get her off the property, Ms. Gilbert becomes someone else's problem. It is this self-serving analysis that leads us to another purpose of tort law, deterrence. Sentry Select Ins. Co. v. Maybank Law Firm, LLC, 426 S.C. 154, 159 826 S.E.2d 270, 272 (2019).

In the Sentry case, the court found that an insurer could maintain a direct action of legal malpractice against counsel who they hired to represent a defendant in a lawsuit because the insurer was the one that suffered the brunt of the economic harm. Id. The court relied on Fabian v. Lindsay, which considered several factors to determine whether the defendant could be liable to a third party not in privity. 410 S.C. 475, 765 S.E.2d 132 (2014). One of the factors, and the reason for tort law itself, is "the policy of preventing future harm". Id. at 137. "Underlying this justification is the assumption that potential wrongdoers will avoid wrongful behavior if the benefits of that behavior outweighed by the costs imposed by the payments of

damages…" <u>Sentry</u>, 426 S.C. 159, 826 S.E.2d 272. This justification can be found in nearly every corner of modern tort law.

Our courts hold bars responsible for the actions of the intoxicated customers they serve. S.C. Code Ann. § 61-4-580(2); <u>Tobias v. Sports Club</u>, 332 S.C. 90, 92, 504 S.E.2d 318, 319 (1998) ("purpose is to promote public safety, and to prevent an already intoxicated person from becoming even more intoxicated, and thus an even greater risk to the public at large, when he leaves the establishment"). Our courts hold employers responsible for the wrongful actions of their employees on the job. <u>Falconer v. Beard-Laney, Inc.</u>, 215 S.C. 321, 330, 54 S.E.2d 904, 908 (1949) ("[Respondeat superior] has its foundation and origin in the consideration of public policy, convenience, and justice. It was designed to protect innocent third parties…"). And as you will learn in more detail later, our courts hold medical providers responsible for their patients' actions after treatment they knew could make someone unsafe to drive and thus a danger to innocent third parties they encounter on the road. <u>Hardee v. Bio-Medical Applications of S.C., Inc.</u>, 370 S.C. 511 (2006). What happened here, is that not conduct tort law was designed to deter? Is that not conduct we should all want tort law to deter? What responsible human being would want to send a message encouraging businesses and corporations to send employees *they know* became intoxicated on the job off the property and out on the roads without first acting reasonably? Are the Scibek children not innocent

third parties worth some effort to protect? Corrective justice, deterrence, and the protection of innocent third parties are just a few of the factors courts contemplate when determining duty. We contend these policy considerations would lead the law to say that the Scibeks were entitled to protection and therefore duty exists. In furtherance of these policy considerations, other factors, such as control and foreseeability along with case law and the Restatement (Second) Tort offer additional support for Appellants' argument that Cracker Barrel owed a duty to merely act reasonably under the circumstances.

## I.   BUSINESSES AND CORPORATIONS HAVE A DUTY TO ACT REASONABLY WHEN DECIDING WHAT TO DO WITH A VISIBLY INTOXICATED EMPLOYEE.

Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger. Rogers v. South Carolina Dep't of Parole & Cmty. Corr., 320 S.C. 253, 464 S.E.2d 330 (1995); Rayfield v. South Carolina Dep't of Corr., 297 S.C. 95, 374 S.E.2d 910 (Ct.App. 1998), cert. denied, 298 S.C. 204, 379 S.E.2d 133 (1998); Restatement (Second) of Torts § 314 (1965). However, South Carolina recognizes five exceptions to this rule: 1) where the defendant has a special relationship to the victim; 2) where the defendant has a *special relationship* to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the

defendant. <u>See</u> generally, Hubbard & Felix, <u>The South Carolina Law of Torts</u> 57-72 (1990). <u>Faile</u> <u>v. S.C. Dep't of Juvenile Justice</u>, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002) (emphasis added). A *special relationship* exists when the defendant has the ability to monitor, supervise, and control an individual's conduct. The South Carolina Law of Torts § 2.A.5.b(2); <u>Doe v. Marion</u>, 361 S.C. 463, 471, 605 S.E.2d 556, 560 (Ct. App. 2004). (Patient/therapist found to be a special relationship, but duty denied on other grounds.); <u>See also</u> <u>Ballou v. Sigma</u> <u>Nu Gen. Fraternity</u>, 291 S.C. 140, 352 S.E.2d 488 (1986) (finding a *special relationship* between a fraternal organization and an initiate who had become helplessly drunken from alcohol furnished to him by the fraternity). A master-servant relationship has been recognized as a special relationship. <u>King v. Durham Cty. Mental Health Developmental Disability & Substance Abuse Auth.</u>, 113 N.C. App. 341, 345-46, 439 S.E.2d 771, 774 (1994) (citing Restatement (Second) of Torts § 317; *Prosser and Keeton* § 56, at 384; *Harper, James, and Gray* § 18.7 at 738-39; <u>Vaughn v. Department of Human Resources</u>, 296 N.C. 683, 686, 252 S.E.2d 792, 795 (1979)). Here, the District Court acknowledged that there is no meaningful dispute that Cracker Barrel, as the employer/master, had the ability to monitor, supervise, and control Laura's conduct. (J.A. 656). Cases fitting under the second exception with a *special relationship* relate to §§ 315 and 319 of the Restatement. <u>Faile</u> at 546.

### § 319 Duty of Those in Charge of Person Having Dangerous Propensities

One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The comment further explains:

The rule stated in this Section applies to two situations. The first situation is one in which the actor has charge of one or more of a class of persons to whom the tendency to act injuriously is normal. **The second situation is one in which the actor has charge of a third person who does not belong to such a class but who has a peculiar tendency so to act of which the actor from personal experience or otherwise knows or should know.**

Restat 2d of Torts, § 319 (emphasis added).

Here, Appellants contend the second situation described in the comment applies. This is where *the actor* (Cracker Barrel through manager Milinda Anderson) *has charge over a third person* (Laura) and Ms. Anderson *knows or should know* that an intoxicated Laura is *likely to hurt someone* if she gets behind the wheel.

South Carolina law recognizes a duty under § 319. (See <u>Faile v. S.C. Dep't of Juvenile Justice</u>, 350 S.C. 315, 336, 566 S.E.2d 536, 546-47 (2002) (providing "We do not question this rule of law [§ 319].")); <u>Rayfield v. S.C. Dep't of Corrections</u>, 297 S.C. 95, 374 S.E.2d 910 (1988); <u>Jackson v. S.C. Dep't of Corrections</u>, 301 S.C. 125, 390 S.E.2d 467 (1989)) While our Courts have frequently applied § 319 to duty

to warn cases, "[t]he application of § 319 is <u>not</u> limited to duty to warn cases." <u>Faile</u> at 335 (emphasis added). Failure to warn cases usually involve custodial relationships, but South Carolina courts have found a *special relationship* and exception to the general rule in non-custodial relationships as well, recognizing a duty to control when there is (1) an established authority relationship and (2) a substantial risk of serious harm. <u>Id.</u> at 339.

In <u>Hardee v. Bio-Medical Applications of S.C., Inc.,</u> 370 S.C. 511 (2006), a medical provider allowed a patient out on the roads with the motoring public after treatment despite knowing the substantial detrimental effects the treatment could have on the patient's ability to operate motor vehicle. The South Carolina Supreme Court focused solely on the question of "whether a medical provider owes a duty of care to third party non-patient as a result of actions or omission the provider takes in regard to a patient's treatment." <u>Id.</u> at 514. The South Carolina Supreme Court answered that question stating "[w]e believe South Carolina tort law ought to recognize such a duty." <u>Id.</u> at 516. Similarly, in this case, Appellants are asking whether an employer owes a duty of care to a third party non-employee as a result of the actions or omission the employer took while the employee was on the job. The only distinguishing factor between the cases is a physician-patient relationship versus an employer-employee relationship. Both of these relationships have been held in South Carolina to impose a duty to control, supervise, or warn based on the

special relationship to the injurer. See The South Carolina Law of Torts §2.A.5.b(2). Thus, Appellants contend South Carolina tort law does recognize a duty.

### A. The District Court confuses Restatement (Second) of Torts § 324 with the standard necessary in Restatement (Second) of Tort § 319.

The problem that arises in the District Court's Order is that it confuses standards from other sections of the Restatement and analyzes this case as if they are all interchangeable. The District Court defends the ruling by concluding that Cracker Barrel never sufficiently took charge over Laura and stated, "in <u>Carson v. Adgar</u> the South Carolina Supreme Court expressly rejected such a narrow view of 'tak[ing] charge.'" This statement shows the District Court erroneously applies the definition of "taking charge" of a *helpless person* of § 324 to *Those in Charge of Person having Dangerous Propensities* from § 319. In reality, these are different factual scenarios and the ruling from <u>Carson</u> examining § 324 did not even touch upon, much less limit the view of *Those in Charge of Person having Dangerous Propensities* from § 319. 326 S.C. 212, 486 S.E.2d 3 (1997).

<u>Carson</u> is a case where two co-workers went out drinking after work together. <u>Id.</u> They got so drunk and belligerent that Carson asked to get out of the vehicle and was left on the side of the road where he was later struck by a car. <u>Id.</u> Carson's Estate made a negligence claim under § 324. The ruling was simply that the driver did not take control of Carson by allowing him to get out of the car. <u>Id.</u> Again,

this was within the context of § 324 which provides one who takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm. Restat 2d of Torts, § 324. Here, the Court uses the ruling concerning *taking charge of a helpless person* of § 324 to define *those in charge of a person likely to hurt other people* in § 319.

The first reason not to apply the District Court's interpretation of taking charge of a helpless person under the context of § 324 to those in charge of dangerous people of § 319 is because § 324 prescribes a duty to protect the helpless person only and provides a cause of action by the helpless person him or herself, <u>not the innocent people that person injures</u>. The second reason not to apply one to the other is because factually, this case is very different from the definition from <u>Carson</u>. Again, <u>Carson</u> is where two co-employees go drinking <u>after</u> work and the question was whether one took charge of the other by allowing him to simply exit a vehicle. The ruling from <u>Carson</u> was that those facts were insufficient to show the driver took charge over the passenger within the context of § 324. Here, there is ample evidence in the record that Laura became intoxicated while on the clock. In analyzing this case under § 319, we do not need to examine whether Cracker Barrel took control over Laura. The District Court acknowledged Cracker Barrel had the ability to monitor, supervise, <u>and control</u> Laura's conduct. (J.A. 656). We know conclusively that when decisions were made, she was on the clock and

14

subject to the direct control of her employer Cracker Barrel, and manager, Milinda Anderson.

When Laura was pulled from the floor twice to be evaluated by her manager, she was on the clock. When Laura was questioned about her condition, she was on the clock. When Laura was instructed by her supervisor to clock out and go home, she was on the clock. When her co-worker pointed out Laura was in no condition to drive home and was denied permission to drive her home, they were all on the clock. When Cracker Barrel manager Milinda Anderson violated company policy by deciding not to call corporate or Laura's husband, they were all still on the clock.

Under South Carolina law, the primary consideration in determining whether an employer/employee relationship exists is control. Kilgore Group, Inc. v. South Carolina Employment Sec. Comm'n, 313 S.C. 65, 68, 437 S.E.2d 48, 49 (1993) (citing Felts v. Richland County, 303 S.C. 354, 400 S.E.2d 781 (1991)). Here, no one disputes Laura was an employee of Cracker Barrel and on the clock when decisions were made to send her off the property. Therefore, the issue of control or who was in charge is a legal element of employment, and not an issue for the Court to even decide. If Cracker Barrel did not have *the ability to monitor, supervise, and control her conduct*, she would not be an employee, but rather an independent contractor.

15

South Carolina law establishes conclusively that Laura was under the control of Cracker Barrel and her manager, Milinda Anderson, when decisions were made, offers to help were rejected, company policy was ignored and Laura was instructed to clock out and go home. Carson is different factually, analyzed under a different section of the Restatement, and the analysis of duty is not even to the same class of persons. It is clear legal error to evaluate duty under § 319 using rulings concerning § 324.

Not stopping there, the District Court continues to use rulings concerning § 324 in Carson as an analysis of § 319 stating "in order to establish the defendant has 'taken charge of' one who [is] helpless, the plaintiff must show the defendant did more than act, but through affirmative action assumed an obligation or intended to render services for the benefit of another." (J.A. 595). As hopefully outlined above, the question of whether a defendant intended to render services for the benefit of another is being asked because that is needed under § 324 to know whether the person has taken charge of a helpless person. Again, nothing to do with *those in charge of a person likely to hurt other people* under § 319. Here, Laura was Cracker Barrel's employee and under their direct supervision and control. The Scibeks allege there was a duty to act reasonably at the point when Cracker Barrel knew Laura was intoxicated through the point Cracker Barrel instructed Laura to clock out early and go home. During these points in time, control is legally presumed and no one could

argue it did not exist. Whether Laura was helpless is immaterial. Whether Cracker Barrel rendered services is immaterial. The whole discussion of duty under § 324 should have stopped after stating what it says and to whom the duty is owed.

When the South Carolina Supreme Court recognized a duty under § 319 in Faile, nowhere in the entire decision is a discussion of whether anyone took steps to render aid as the District Court seems to require for the Appellants here. That is because affirmative actions in the context of § 324 (taking charge of a helpless person) are different than for *those in charge of a person likely to hurt other people* under § 319.

In the Order, the District Court looks at affirmative action under the framework of § 324, where affirmative action is necessary to establish *taking* control. Control has been established in § 319 cases not by constant affirmative action, but through contract, court order, or *a legal presumption*. Interestingly, the only action in many of the § 319 cases is simply allowing the release of a dangerous person into the general public. The closest thing to affirmative action in Faile was allowing the child to go home, failing "to inform the judge the placement violated the earlier court order...[and] not request[ing] a modification of the earlier order." Id. 540. The closest thing to affirmative action in the § 319 failure to warn cases was just that, a failure to warn. In other words, doing nothing is a choice in and of itself. Here, although affirmative action is not required, certainly it can be said that

17

Cracker Barrel took affirmative action in pulling Laura from the floor, questioning her, instructing her to clock out and go home, and denying a co-worker's request to drive her home.[1] <u>Semler v. Psychiatric Institute of Washington, D.C.</u>, 538 F.2d 121 (4th Cir. 1976), cert. denied sub nom., <u>Folliard v. Semler</u>, 429 U.S. 827, 97 S. Ct. 83, 50 L. Ed. 2d 90 (1976) is a Fourth Circuit case cited by the Court in <u>Faile</u> involving allowing a dangerous patient to leave. While Cracker Barrel could respond by pointing out all the differences between allowing someone to leave in a custodial case to telling Laura to clock out and go home, it is really nothing more than simply pointing out the difference between allowing someone to leave in a custodial case to sending a person home early in an employee/employer intoxication case. In both situations, someone has control over another who is likely dangerous. In control via custodial relationship cases, that person is either mentally deranged or otherwise prone to violence. In the control via employee/employer relationship case here, the person is highly intoxicated or otherwise incapacitated and about to get behind the wheel. It only took less than thirty minutes for Laura to cause the harm, much quicker than in any of the custodial cases. One could hardly argue Laura, who crashed into a golf cart full of children at high speed, was any less dangerous than a teenager who assaulted the child of his former foster parents.

---

[1] Appellants focus on these facts not to necessarily prove affirmative action, but as evidence of the exercise of control Cracker Barrel had over Laura and the opportunity to act reasonably.

South Carolina has in no way limited § 319 cases to custodial arrangements, it simply has not yet analyzed affirmative acts in an employee/employer case to § 319. Appellants would be the first to admit, that were it not for the acts of pulling Laura off the floor, questioning her, and instructing her to clock out and go home, while denying a co-employee's request to drive her home, this would be a very different case. Had Laura's shift simply ended, there would be no argument that Cracker Barrel actively and purposefully sent her out on the road in a highly intoxicated state. Had there been no interrogation by Laura's manager, the case would probably also fail due to a lack of knowledge of her likelihood to cause harm. But neither of those circumstances exist here. Plaintiffs submit to the Court that pulling Laura off the floor, questioning her, and instructing her to clock out and go home while denying a co-employee's request to drive her home was not only a violation of company policy but affirmative acts and the exercise of control within the context of an employee/employer relationship. The question for § 319 is whether there is a relationship that puts one in charge over another. In the end, Faile followed the Restatement and ruled there is a duty to act reasonably when **"there is an established authority relationship and a substantial risk of serious harm."** Id. 548. Both of those factors exist in the present case as well.

It is the same authority relationship within this Court's own office that is the basis for the rules contained in the United States Office of Personnel

Management *Handbook for Supervisors*. As the OPM describes:

> If the employee is disruptive to the workplace, you should remove him or her from the immediate worksite. This may involve taking the employee home or at least taking him or her to the health unit, the EAP office, or some other safe location. An employee who is physically resisting should be dealt with by agency security or local police. **The employee should not be sent home alone or allowed to drive**. It would be appropriate to consider having a family member take the employee home. A taxi is also an option. There could be some serious liability issues involved here so it is important to consult with Human Resources, Employee Relations, and the legal counsel's office.

https://www.opm.gov/policy-data-oversight/worklife/reference-materials/alcoholism-in-the-workplace-a-handbook-for-supervisors/ (emphasis added).

The United States government recognizes that in an employee/employer relationship, one is in control of another. If the employee is likely to cause bodily harm, reasonable care is required. The handbook spells out what reasonable care includes. If a member of the Court's staff was intoxicated, too intoxicated to do his or her job, and disruptive to the workplace, the control and authority inherent to the employee/employer imposes a duty on the Court's supervisors to act reasonably. But if you do not, the "serious liability issues" include a negligence lawsuit for failing to use reasonable care with someone you had control over when you realized he or she posed a danger to the public… exactly what § 319 describes.

So, in custodial cases, control is established and the affirmative act of simply allowing someone to leave is viewed within the context of the agreement, court order, or other guiding document. In the situation described above by the Court's own *Handbook for Supervisors*, the affirmative act of sending an intoxicated employee home would be viewed in the context of the United States government policy stating "[t]he employee should not be sent home or allowed to drive." One could argue, that is what makes it more of an affirmative act, sending someone home early for intoxication when company rules prohibit doing that. It is an act itself to violate the conditions of a court order. It is an act itself to violate the government's own *Handbook for Supervisors.* Likewise, it is an act itself to violate Cracker Barrel's own corporate policy to thoroughly investigate, contact corporate, and/or call a friend, family member, an ambulance or the police. (J.A. 624-627).[2]

Here, when the facts are viewed in the light most favorable to the Scibeks, Cracker Barrel was on notice that Laura Gilbert was intoxicated to the extent she was disruptive to the workplace (falling over, slurring words, not making sense, all while customers were noticing) and likely to cause bodily harm if she were to get behind the wheel. Cracker Barrel took on affirmative acts including directing her to

---

[2] The Scibek family does not contend that a cause of action is created from Cracker Barrel's corporate policies. We submit Craker Barrel's violation of its own corporate policies as context that shows its manager's choices that day were not simply inaction.

21

clock out and go home and denying a co-worker's request to drive her home safely. Cracker Barrel, as her employer legally in charge and in control, had a duty to act reasonably given the undeniable, foreseeable harm.

### B. The Texas Supreme Court provides a well-reasoned approach to this issue.

The Scibek family focused most of their oral argument on the case of <u>Otis Eng'g Corp. v. Clark</u>, 668 S.W.2d 307 (Tex. 1983). While Otis was not submitted nor represented as controlling authority, it is, however, an example of a rather conservative court applying pretty much identical facts to § 319 and finding a duty to act reasonably. <u>Otis</u> is a wrongful death case brought by the husbands of two women killed in a drunk driving automobile wreck. The drunk driver worked for Otis Engineering Corporation where he became intoxicated while on the job, but caused a wreck after he clocked out and left. The allegations were that the drunk driver would go out to his car and consume alcohol in the parking lot. A co-worker testified that on the day of the incident, he told management the drunk driver was "not acting right, was not coordinated, was slurring his words, and that 'we need to get him off the machines.'" <u>Id.</u> at 308. The manager's response was to send him home early. Thirty minutes later, the wreck occurred and two women lost their lives. Otis Engineering Corporation brought a Motion for Summary Judgment contending they owed no duty of care to the Clarks. Otis maintained as Cracker Barrel does here, that at worst, its conduct involved "nonfeasance" and that imposing

a duty to act reasonably would be an extension of dram shop laws. Id. at 309. The Texas Supreme Court explained that the case was more about "a duty upon an employer to act reasonably when he exercises control over his servants" and the risk of harm is foreseeable. Id. at 310. Analyzing the case under Restatement (Second) of Torts, § 319, the Court recognized the duty, but was careful to explain "the rule from cases in this Restatement ... that the duty of the employer or one who can exercise charge over a dangerous person is not an absolute duty to ensure safety, but requires only reasonable care." Id. at 311. The Scibek family recognizes that Cracker Barrel was not required to guarantee their safety, but only to act reasonably under the circumstances. Here, the District Court's very limited discussion of Otis (confined to a footnote) dismisses the decision for two reasons. First, that other jurisdictions have ruled differently. Appellants admit there are cases from other jurisdictions landing on both sides of this issue. See Robertson v. LeMaster, 301 S.E.2d 563 (W. Va. 1983) (holding that sending a very visibly fatigued employee out on the highway after his 27-hour shift had ended was an affirmative action requiring reasonable care.) That fact alone hardly makes Otis "inapposite." Second, that "South Carolina courts have analyzed the notion of 'control' differently." (J.A. 595, FN 5). The problem is the Court's analysis for control was within the context of *taking charge of a helpless person* of § 324 rather than *those in charge of a person likely to hurt other people* under § 319.

23

Here, as in <u>Otis</u>, there is evidence in the record that Laura became intoxicated while on the job. The District Court correctly finds that as fact for the purpose of the Motion hearing. Here, as in <u>Otis</u>, management was made aware of the employee's intoxication while on-the-job by a co-employee and Laura was still on-the-job when decisions were made to send her home early. Both employees had around the same blood alcohol level and both employees caused a wreck within about thirty minutes of being directed to clock out and go home. The main difference, however, is that Otis's employee had a history of drinking on the job and the manager walked him out to the car. While it is true those facts existed in <u>Otis</u> but not here, they are relevant to whether the employer knew or should have known of the intoxication itself. Here, we have testimony and a sworn affidavit outlining in detailed fashion the notice Cracker Barrel had of Laura's condition. The only thing truly inapposite from <u>Otis</u> is the result.

A foundation for the existence of a duty to act reasonably lays squarely within existing South Carolina law and the actual text of § 319. As Dean Prosser has observed, "No better general statement can be made, than the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." W.L. Prosser & W.P. Keeton, <u>Torts</u> § 53, at 358-359 (5th ed. 1984). South Carolina has done just that in adopting § 319 and this case fits squarely within it. Reasonable men and women would all want businesses and corporations to, at the very least,

think before they act when deciding how to handle a visibly drunk or otherwise intoxicated employee that they know is about to get behind the wheel. As the District Court noted, Cracker Barrel had the ability to monitor, supervise and control Laura's conduct. (J.A. 656). The Scibek family is asking the Court to recognize Cracker Barrel's duty to act reasonably in light of the foreseeable and preventable danger.

## <u>CONCLUSION</u>

Appellants request that the Court reverse the decision of the District Court and send this case to a jury for a determination of reasonable care under the circumstances.

/s/ Kevin B. Smith
Kevin B. Smith, Esq.
(Fed. ID 9074)
Amanda R. Stearns,
Esq. (Fed. ID 12597)
Hoffman Law Firm, LLC
7087 Rivers Avenue
North Charleston, SC
29406 (843) 769-7077
ksmith@hoffmanlawfirm.com
amanda@hoffmanlawfirm.com
*Counsel for Appellants*

North Charleston, SC

July 15, 2024